DAVIDSON AND JONES, INC. v. NORTH CAROLINA DEPARTMENT OF ADMINISTRATION AND THE UNIVERSITY OF NORTH CAROLINA

No. 511PA84

(Filed 10 December 1985)

**1. State § 4— construction contract—breach by State—remedy in contract not required**

     A contractor is not precluded from recovery under N.C.G.S. § 143-135.3 for breach of a construction contract by the State by failure of the contract to specify a remedy for the alleged breach. Rather, the statute simply requires that the contractor's claim arise out of a breach of the contract or some provision thereof so as to entitle the contractor to some relief.

**2. State § 4— construction contract—overrun in rock excavation—mutual mistake—entitlement to duration-related costs**

     An unexpected overrun exceeding 400% in the amount of rock to be excavated under a construction contract with the State was a mutual mistake en-

titling plaintiff contractor to recover its duration-related costs incurred after the originally scheduled completion date as "extra costs" contemplated by the contract. N.C.G.S. § 143-135.3.

**3. State § 4— construction contract—no waiver of extra duration-related costs**

The trial court properly concluded that plaintiff did not waive or release its claim to duration-related costs caused by a massive overrun in the amount of rock to be excavated under a contract with the State when it executed a change order providing for payment for some extra expenses and for rock at the unit price and referring to "adjustment of all other construction caused thereby."

**4. State § 4— construction contract—overrun in rock excavation—no entitlement to extra home office costs**

A contractor could not recover extra home office costs incurred as a result of an extension of a construction contract with the State resulting from a massive overrun in the amount of rock to be excavated because such expenses were not contemplated by the contract.

Justice BILLINGS did not participate in the consideration or decision of this case.

ON grant of a writ of certiorari to review a decision of the North Carolina Court of Appeals, 69 N.C. App. 563, 317 S.E. 2d 718 (1984), affirming in part and reversing in part an award by *Godwin, J.*, for plaintiff entered out of session on 15 July 1982 in Superior Court, WAKE County. Heard in the Supreme Court 9 April 1985.

*Griffin, Cochrane & Marshall, by Luther P. Cochrane and Jennifer W. Fletcher; and Manning, Fulton & Skinner, by Charles L. Fulton for petitioner-appellant.*

*Lacy H. Thornburg, Attorney General, by Grayson G. Kelley, Assistant Attorney General, for defendant-appellees.*

FRYE, Justice.

Petitioner has presented two essential questions for our review. The first is whether the Court of Appeals correctly held that a contractor in a civil action, pursuant to G.S. 143-135.3, may not recover duration-related costs incurred as the direct result of an unexpected overrun exceeding 400% in the amount of rock to be excavated under a construction contract with the State of North Carolina. For the reasons stated hereinafter, we conclude that the Court of Appeals erred in so holding. As to the second,

we agree with the trial court and the Court of Appeals that plaintiff may not recover extra home office expenses. Other questions decided by the Court of Appeals in reversing the trial court's award of financing costs and interest costs to the plaintiff were not briefed or argued before this Court, and we express no opinion thereon.

Plaintiff contracted with defendants North Carolina Department of Administration and the University of North Carolina to build an addition to Wilson Library on the University's Chapel Hill campus. As the project progressed, plaintiff encountered a massive overrun in the amount of rock to be excavated and requested compensation for certain extra costs. Defendants rejected part of this request. After the project was completed, plaintiff brought suit for relief pursuant to G.S. 143-135.3 on grounds of mutual mistake and implied warranty. The trial court found in favor of the plaintiff and awarded it (1) payment at the contract's unit price for all rock excavated, (2) duration-related costs, (3) financing costs, and (4) interest on the entire award, but denied plaintiff's request for reimbursement for extra home office costs. Defendants appealed to the Court of Appeals, which affirmed the first part of the award and reversed the remainder. Plaintiff contends before this Court that the Court of Appeals erred in its interpretation of both G.S. 143-135.3 and the contract between the parties.

The bidding documents for the Wilson Library Project, which were made part of the contract, included a "rock clause" instructing the bidder to include 800 cubic yards of rock excavation in its base bid. The documents also requested a unit price, per cubic yard, for computing adjustments to the contract for rock above or below this quantity. Plaintiff included in its proposal a unit price of $55 per cubic yard and proposed a completion time of 540 days for the entire project. In computing the amount of time to complete the project, plaintiff had allowed eight weeks for rock removal based on the 800 cubic yard quantity given in the bidding documents.

The anticipated amount of rock turned out to be grossly erroneous. Plaintiff had submitted a schedule to the project architect which called for completing all excavation by 10 October 1975. By that date, plaintiff's subcontractor had already removed

over 800 cubic yards of rock, and an unknown quantity still remained. Plaintiff began petitioning for additional compensation and time to complete the project. Not until April of the following year (1976) was all of the rock that needed to be removed excavated. The quantity totaled 3714 cubic yards.

Defendants did not respond to plaintiff's requests for additional payment until February 1976, when plaintiff threatened to stop working if no agreement was reached. On 2 March 1976, representatives of the plaintiff and the defendants met to discuss plaintiff's claims. Plaintiff was by that time seeking not only payment for extra rock excavation at the unit price but also for the duration-related costs it expected to incur after the originally scheduled completion date. At this meeting, defendants' representatives agreed to pay plaintiff for some of the requested items but instructed plaintiff to pursue the statutory disputes resolution process for payment on the other items when the project was finished.

As a result of this meeting, plaintiff continued to work on the project, completing it within the time extensions granted. It then followed the procedures outlined in G.S. 143-135.3, in applying for additional compensation. After the required hearing before the North Carolina Department of Administration, plaintiff filed a civil action in Superior Court, Wake County, on 11 September 1978. After making detailed and extensive findings, the trial court concluded that plaintiff was entitled to payment at the unit price for all rock excavated; $110,710 for duration-related expenses; $2,369 for interest obligations incurred due to the State's tardy payments; and interest on the total award at the rate of five percent per year from 31 March 1976. The trial court denied plaintiff's claim for payment for home office expenses attributable to the extension of the project.

On appeal, the Court of Appeals reversed the trial court's decision as to the duration-related expenses, the financing expenses, and the interest on the total award. It affirmed the denial of reimbursement for home office expenses. Plaintiff's petition for a writ of certiorari to review the Court of Appeals' decision was allowed by this Court on 8 January 1985.

The trial court held in its conclusions of law that plaintiff was entitled to relief "pursuant to the Contract, Articles 15 and

16, and because of mutual mistakes . . . ." We note that it is unclear whether the court was basing its decision on two separate grounds (provisions of the contract and the equitable ground of mutual mistake) and saying that an award could be based on either, or whether the court meant that plaintiff was entitled to relief as provided by Articles 15 and 16 because of mutual mistake of fact.

Without drawing any distinctions between these two interpretations, the Court of Appeals concluded that plaintiff was not entitled to recover anything beyond the unit price for rock excavation for which the State had not yet paid. The court quoted part of G.S. 143-135.3, which outlines the procedures to be followed "should the contractor fail to receive such settlement as he claims to be entitled to under terms of his contract," N.C. Gen. Stat. § 143-135.3 (Cum. Supp. 1983).[1] Citing *Middlesex Construction Corp. v. State ex rel. Art Museum Bldg. Comm.*, 307 N.C. 569, 299 S.E. 2d 640 (1983), *reh'g denied*, 310 N.C. 150, 312 S.E. 2d 648 (1984), the court said:

> [W]e hold that the State's waiver of sovereign immunity in a breach of contract action is valid only to the extent expressly

---

1. The relevant portions of the statute read at that time:

§ 143-135.3 *Procedure for settling controversies arising from contracts; civil actions on disallowed claims.* — Upon completion of any contract for construction or repair work awarded by any State board to any contractor, under the provisions of this Article, should the contractor fail to receive such settlement as he claims to be entitled to under terms of his contract, he may, within 60 days from the time of receiving written notice as to the disposition to be made of his claim, submit to the Secretary of Administration a written and verified claim for such amount as he deems himself entitled to under the terms of said contract . . . .

As to such portion of the claim which may be denied by the Secretary of Administration, the contractor may, within six months from receipt of the decision, institute a civil action for such sum as he claims to be entitled to under said contract . . . .

. . . .

The provisions of this section shall be deemed to enter into and form a part of every contract entered into between any board of the State and any contractor, and no provision in said contracts shall be valid that is in conflict herewith.

1973 N.C. Sess. Laws, ch. 1423.

stated in the statute, and that the plaintiff's remedy here must be found exclusively within the express terms of the statute. The statute is clear in limitation of recovery except as otherwise provided '*under the terms of his contract.*'

*Davidson and Jones v. N.C. Dept. of Administration,* 69 N.C. App. at 570, 317 S.E. 2d at 723.

[1] If the Court of Appeals meant by these words to suggest that a contractor with the State has no remedy for a breach by the State of a specific contractual obligation unless the contract itself specifies a remedy for such a breach, we disagree. *See Middlesex Construction Corp. v. State ex rel. Art Museum Bldg. Comm.,* 307 N.C. 569, 574, 299 S.E. 2d 640, 643 (1983), *reh'g denied,* 310 N.C. 150, 312 S.E. 2d 648 (1984); *Smith v. State,* 289 N.C. 303, 307-22, 222 S.E. 2d 412, 414-25 (1976). We note that when referring to the contractor's claim before the Department of Administration, the statute (G.S. 143-135.3) uses the language "under the terms of said contract." However, when referring to the action to be filed in the superior court, the statute uses the language "under said contract." While there may conceivably be situations suggesting a reason for the difference in language between the two portions of the statute, we attach no significance to these differences as they apply to the case *sub judice,* since plaintiff here sought the same relief before the Department of Administration as it seeks by this civil action, that is, extra costs pursuant to Articles 15 ("Changed Conditions") and 16 ("Extra Costs") of its contract. Nevertheless, to the extent that language in the opinion of the court below may be read to suggest that the courts are powerless to grant relief to an aggrieved contractor for breach of the construction contract in the absence of a specific term of the contract allowing such relief, we disavow such language. We interpret the statute as requiring simply that the contractor's claim arise out of a breach of the contract or some provision thereof so as to entitle the contractor to some relief. *See* N.C. Gen. Stat. § 143-135.3 (Cum. Supp. 1983).

Article 16 of the contract in question reads:

Claims for Extra Cost

Should the contractor consider that as a result of any instructions given in any form by the Engineer or Architect, he

is entitled to extra cost above that stated in the contract, he shall give written notice therefor to the Engineer or Architect without delay, and shall not proceed with the work affected until further advised except in emergency involving the safety of life or property, which condition is covered in Article 12 and 15. No claim for extra compensation will be considered unless the claim is so made.

THE CONTRACTOR SHALL NOT ACT ON INSTRUCTIONS RECEIVED BY HIM FROM PERSONS OTHER THAN THE ENGINEER OR ARCHITECT, AND ANY CLAIMS FOR EXTRA COMPENSATION ON ACCOUNT OF SUCH INSTRUCTION WILL NOT BE HONORED. The Architect or Engineer will not be responsible for misunderstanding claimed by the contractor of verbal instructions which have not been confirmed in writing, and in no case shall instructions be interpreted as permitting a departure from the contract documents unless such instruction is confirmed in writing and supported by a properly authorized change order whether or not the cost is affected.

While it is abundantly clear from the language therein that Article 16 of the construction contract involved in this action provides a procedure for an aggrieved contractor to seek and obtain relief, the only relief specifically provided is reimbursement for "extra costs." We must therefore determine whether the duration-related expenses awarded to plaintiff by the trial court may fairly be said to be included within the meaning of the term "extra costs" as that term is used in Article 16 of the contract. If so, it is unnecessary to search further for support for the trial court's award of such expenses to the contractor.

Article 16 contains five requirements important to this inquiry:

1) instructions from the project architect, which caused

2) extra costs,

3) written notice without delay,

4) cessation of work affected until,

5) further instruction either by the architect or, if the instruction meant departing from the contract documents, by a change order.

The Court of Appeals implicitly held that plaintiff was not entitled to relief for its duration-related costs under Article 16 because it had already excavated most of the extra rock by the time it requested additional compensation instead of giving timely notice and stopping work as contemplated under that article. We do not agree.

The bulk of plaintiff's extra costs were caused by the presence of a greater quantity of rock than either party anticipated rather than by a new instruction from the architect to remove extra rock.[2] Nevertheless, Article 16 clearly states that such an instruction can be "in any form" and contains no requirement that it come after the contract was made. The contract itself contained specifications requiring excavation to particular dimensions set by the architect.

Plaintiff claimed two types of extra costs. The first was the direct cost of removing the extra rock. The trial court awarded the plaintiff compensation for this expense at the unit price. The Court of Appeals affirmed this award and this part of its decision was not disputed before this Court. The second cost was that of maintaining required personnel, equipment and services at the project site itself for six months after the originally scheduled completion date. The trial court found as a fact, based on evidence introduced at trial, that these items were customarily budgeted as a function of a project's expected duration and were included as such in a contractor's base bid. The trial court further found that it was not customary, at least at that time, to make any allowance for such costs in setting unit prices.

The trial court noted that the plaintiff had introduced the originals of its cost records for these duration-related items, that these records were made contemporaneously "in the regular course" of business by someone with "personal knowledge of the events and amounts recorded," and that the plaintiff had required periodic checks and used various other methods to insure accuracy.

---

2. The trial court found as a fact that due to the nature of the subsurface rock, "representatives of the Owner" ordered the plaintiff to excavate to a lower depth than was originally specified to find firmer footing. The record shows that this "representative" did in fact come from the architect, but it also shows that only 172 cubic yards was involved and that the State seems to have paid for the costs related to this "instruction" with Change Order G-4.

The trial court also found in extensive findings of fact that the sole reason for extending the completion date for twenty-six weeks (six months) was the necessity of removing 2914 unanticipated cubic yards of rock. The court found that plaintiff completed all other construction within the time frames set forth in its initial schedule. The court frequently refers in the findings to the efficiency shown by plaintiff and its subcontractor in excavating the excess rock. The original schedule, which the court found reasonable, had allocated eight weeks for rock excavation, or about one hundred cubic yards per week. Despite problems caused by the nature of the rock and delays by other contractors, plaintiff's subcontractor actually removed 3714 cubic yards in thirty-four weeks. The court also found that the rock excavation was a "critical item" in the project; in other words, the contractor could not have used the time to work on other parts of the project.

[2]  The Court of Appeals disagreed with the trial court that this overrun was a mutual mistake entitling the plaintiff to any relief for its extra duration-related costs. Quoting *Corbin on Contracts*, the court concluded that the "rock clause" in the contract created an aleatory agreement, one which depends upon an uncertain event. The portion of the rock clause at issue reads as follows:

0230 *Rock Excavation:*

> Material to be excavated is assumed to be earth and materials that can be removed with hand tools. If rock is encountered within limits of excavation, adjustments will be made in Contract on basis of unit price stated in Form of Proposal for all rock removed above or below these quantities:

> 1. The General Contractor shall include *800* cubic yards of rock excavation in his base bid.

Because the clause required the contractor to propose a unit price "for all rock . . . above or below these quantities," the court reasoned that the plaintiff had assumed the risk of rock overruns and, despite recognizing that 3714 cubic yards "is materially and substantially different from 800 cubic yards of rock," *Davidson and Jones v. N.C. Dept. of Administration*, 69 N.C. App. at 572, 317 S.E. 2d at 724, concluded that there was no mutual mistake.

After examining the trial court's findings of fact, we do not agree that the rock clause allocated the risk of an overrun exceeding 400%. The trial court found that the plaintiff had inspected the site as required in the bidding documents and had seen nothing to indicate the presence of such an excess. The court further found that it was neither customary nor reasonable for a contractor to order his own subsurface investigation. Contractors customarily relied upon the State's figures; plaintiff here had actually relied upon them. Some variation was to be expected. Based upon the evidence presented at trial, the trial court found that ten to fifteen percent was a reasonable variation. The court's findings of fact were based on competent evidence and may not be disturbed on appeal. *Whitaker v. Everhardt*, 289 N.C. 260, 221 S.E. 2d 316 (1976). We agree with the trial judge's conclusion that the extra duration-related costs resulted from a mutual mistake as to the amount of rock. *See Groves & Sons v. State*, 50 N.C. App. 1, 273 S.E. 2d 465 (1980) (wetness substantially in excess of that indicated in project specifications constituted a mutual mistake), *cert. denied*, 302 N.C. 396, 279 S.E. 2d 353 (1981); *see generally* 3 A. Corbin, *Contracts*, § 598 (1960).

As to the notice requirement, the trial court made several findings showing that plaintiff gave both verbal and written notice of its increasing costs as they increased and concluded that plaintiff provided "appropriate notification." Plaintiff correctly points out that defendants failed to except both to this portion of the court's conclusion and to the findings of fact on which it was based. We accept the trial judge's conclusion that notice was appropriate. *See Triangle Air Cond. v. Board of Education*, 57 N.C. App. 482, 291 S.E. 2d 808, *cert. denied*, 306 N.C. 564, 294 S.E. 2d 376 (1982); *Groves & Sons v. State*, 50 N.C. App. 1, 273 S.E. 2d 465 (1980), *cert. denied*, 302 N.C. 396, 279 S.E. 2d 353 (1981); *cf. Bridge Co. v. Highway Comm.*, 30 N.C. App. 535, 227 S.E. 2d 648 (1976) (notice found insufficient).

Echoing the Court of Appeals, defendants object that plaintiff did not give notice of its request to be reimbursed for duration-related costs until the bulk of the extra excavation was completed, nor did it then stop work until it had received a change order. Article 16 dictates that the contractor not "proceed with the work affected until further advised." Defendants' objection confuses the nature of the types of costs plaintiff incurred.

Had the contractor claimed additional payment for the rock excavation itself under Article 16, this argument might have been a good one. In this case, however, plaintiff would not incur extra duration-related costs until the following January, when the project was originally scheduled for completion. Its duration-related expenses at the time of the excavation itself had been included in its base bid. Thus, as far as these expenses were concerned, there was no "work about to be affected" for the plaintiff not to proceed with, and hence no requirement under Article 16 that it stop what it was doing at the time. By 5 January 1977, the originally scheduled completion date, the State had approved extending the completion date 240 days, in Change Orders G-2, G-5, G-10 and G-12. The trial court found that at least 210 of these days, or thirty weeks, were caused exclusively by the prolonged period for rock excavation. By the time plaintiff began incurring its extra duration-related expenses, it had its change orders in hand.

Plaintiff has therefore shown that it has complied with the requirements of Article 16. Since its extra duration-related costs were the result of mutual mistake as to the amount of rock to be excavated, it is entitled to recover these extra costs under this article. *See Groves & Sons v. State,* 50 N.C. App. 1, 273 S.E. 2d 465, *cert. denied,* 302 N.C. 396, 279 S.E. 2d 353; *see also Lowder, Inc. v. Highway Comm.,* 26 N.C. App. 622, 217 S.E. 2d 682 (relief given under changed conditions clause for breach of implied warranty), *cert. denied,* 288 N.C. 393, 218 S.E. 2d 467 (1975).

[3] Defendants in their brief also argue that Change Order G-4, which ordered payment for some extra expenses and for rock at the unit price, forecloses any claim for additional reimbursements. This change order was issued at least partially as a result of the 2 March 1976 meeting. The trial court found, supported by competent evidence, that at this meeting plaintiff requested compensation for several additional expenses, among them duration-related costs, and that defendants' representatives told plaintiff that the State lacked sufficient contingency funds to pay for all of the requested items. The parties agreed on payment for some of the extra costs but not others. Change Order G-4 reflects the agreed upon items. As to those costs not agreed upon, plaintiff was advised (according to the evidence, by the Department of Administration representative) to pursue the remedy provided by

the contract disputes resolution statute (G.S. 143-135.3) after the project was over, which plaintiff did.

The section of the change order on which defendants rely reads:

> Net Amount to be paid Davidson & Jones, Inc. for any and all rock excavation on this project to date plus payment for adjustment of all other construction caused thereby: $111,985.00.

Pointing to the phrase "adjustment of all other construction caused thereby," defendants argue that plaintiff waived or released its claim to duration-related costs by executing the change order. We note that defendants do not claim that this change order represented an accord and satisfaction but claim instead that it is a part of the construction contract.

The section quoted above is not the only important part of the change order. Change Order G-4, which includes an attached letter from Davidson and Jones, appears as document #73 in plaintiff's document book, a part of the record on appeal. The change order first authorizes payment for 3300 cubic yards of rock at the unit price. It then states:

> With the lowering of footings, additional concrete column pedestals were required as well as the lowering of the exterior wall along the west side and south side; also requiring compacted fill between column pedestals and beneath floor slab as shown in Davidson & Jones, Inc. letter dated March 19, 1976 attached hereto and revised as follows.

The change order then authorizes payment for these other construction-related costs item by item (total amount $24,485). The attached letter from plaintiff, dated 19 March 1976, had requested almost $5,000 more than this amount for these items. Thus, G-4 does not authorize payment for all that plaintiff claimed for these listed items. Looking at the change order as a whole, plaintiff could reasonably conclude that it was only waiving its claim to this $5,000 difference.

The trial court thus found as facts that plaintiff claimed reimbursement for duration-related expenses, that defendants' representatives told plaintiff's representatives that there was not

sufficient money to cover these expenses and to pursue the statutory remedy after completion of the project for disputed costs, and that in executing Change Order G-4, plaintiff did not intend to compromise or release any disputed claims. There is evidence to support each of these findings. The court then concluded that Change Order G-4 did not waive, release or negate plaintiff's claims and that plaintiff was entitled to execute the change order without affecting its rights to appeal the disputed amounts. Considering the statements of defendants' representatives about the lack of funds, the instruction to pursue the statutory remedy, and the entire contents of Change Order G-4, we agree that the trial court's conclusions were correct.

[4] Plaintiff assigns error to the denial of its claim for compensation for part of its extra home office expenses. The trial court denied recovery under the rule of *Construction Co. v. Crain & Denbo, Inc.*, 256 N.C. 110, 123 S.E. 2d 590 (1962) and the Court of Appeals affirmed. This Court in *Crain & Denbo* concluded that the plaintiffs were not entitled to recover any home office expenses because they were not contemplated in the contract. We agree that nothing in this contract contemplates reimbursement for such indirect, off-site expenses.

On defendants' appeal, the Court of Appeals reversed the trial court's award of $2,369 to the plaintiff for "financing costs." These "financing costs" represented interest plaintiff had to pay on a loan it secured to pay its subcontractor. Despite the fact that plaintiff notified the State of the rock overrun as soon as it occurred (early October 1975), and on several occasions requested payment for it as contemplated by the contract, the State did not pay plaintiff anything for any of the rock removed in excess of 800 cubic yards until February 1976. The trial court found that these "financing costs" were incurred because of the State's tardiness in making its payments. The Court of Appeals' reversal of this award was not briefed or argued before this Court, and we express no opinion thereon.

The Court of Appeals also reversed the trial court's award of interest on the judgment. This part of the court's decision was not disputed before this Court. Accordingly, we do not disturb that portion of the Court of Appeals' decision.

In summary, we reverse the Court of Appeals' reversal of the trial court's award of duration-related costs of $110,710. In all other respects, the decision of the Court of Appeals is affirmed. The cause is remanded to the Court of Appeals for further remand to the Superior Court, Wake County, for a final judgment not inconsistent with this opinion.

Affirmed in part; reversed in part and remanded for judgment.

Justice BILLINGS did not participate in the consideration or decision of this case.