SOUTHERN FURNITURE HARDWARE, INC., AND JOE W. REYNOLDS, PLAINTIFFS V. BRANCH BANKING AND TRUST COMPANY D/B/A BB&T, DEFENDANT

No. COA99-181

(Filed 7 March 2000)

**1. Appeal and Error— appealability—motion in limine**

Although plaintiffs contend the trial court erred in granting defendant's motion in limine to exclude testimony of an expert witness expected to provide testimony as to plaintiffs' losses as a result of defendant's actions regarding plaintiffs' bank loans, motions in limine are not appealable.

**2. Emotional Distress— intentional—negligent—behavior did not exceed all bounds tolerated by decent society**

The trial court did not err by directing verdict in favor of defendant on the issues of intentional or negligent infliction of emotional distress because the evidence, that an officer of defendant BB&T continued to discuss the bank loan with plaintiff Reynolds and implied that the loan would be forthcoming even after internal approval of the loan had been withdrawn, fails to establish that BB&T's behavior exceeded all bounds usually tolerated by decent society.

**3. Civil Procedure— judgment notwithstanding the verdict— alternatively and additionally granting new trial—legally inconsistent**

The trial court erred in granting defendant's motion for judgment notwithstanding the verdict (JNOV) because: (1) the trial court's order is legally inconsistent since its granting of the JNOV is a judicial determination in this case that defendant did not act fraudulently, while the order alternatively and additionally granting a new trial simultaneously returned the issue of fraud to a new jury; and (2) the trial court did not follow the dictates of N.C.G.S. § 1A-1, Rule 50(c)(1) when it granted a new trial, both as an alternative to and in addition to the JNOV, because the statute requires that a new trial be granted if the JNOV is thereafter vacated or reversed.

**4. Damages and Remedies— remittitur—refusal to accept— new trial granted—abuse of discretion**

The trial court abused its discretion in granting a new trial following plaintiffs' refusal to accept the trial court's suggested remittitur because the trial court improperly attempted to compel the parties to accept a remittitur, which is not permitted without the consent of the prevailing party.

**5. Appeal and Error— appealability—order vacated—new trial—issues not considered**

Although defendant challenges the trial court's denial of his motions for summary judgment, directed verdict, and judgment notwithstanding the verdict (JNOV) on the issues of fraud, (1) a trial court's denial of a motion for summary judgment need not be addressed when the moving party thereafter makes a motion for directed verdict; (2) defendant's appeal on the issues regarding fraud is interlocutory since the trial court's post-trial orders have been vacated and a new hearing has been ordered on defendant's motion for JNOV or new trial; and (3) defendant's motion for a directed verdict will be addressed on rehearing.

**6. Appeal and Error— notice of appeal—sufficient**

Although defendant filed a motion to dismiss plaintiffs' appeal on grounds that the notices of appeal were not timely and failed to provide sufficient notice of the orders from which the appeal was taken, the notices were sufficient to satisfy the requirements of N.C. R. App. P. 3(d).

Appeal by plaintiffs from orders entered 27 March 1998 and 4 May 1998 by Judge Ben F. Tennille in Catawba County Superior Court. Appeal by defendant from order entered 3 January 1996 by Judge Beverly T. Beal and orders entered 27 March 1998 and 4 May 1998 by Judge Ben F. Tennille in Catawba County Superior Court. Heard in the Court of Appeals 4 January 2000.

*C. Gary Triggs, P.A., by C. Gary Triggs, for plaintiff-appellants/appellees.*

*Adams Kleemeier Hagan Hannah & Fouts, by W. Winburne King, III, and Benjamin A. Kahn, for defendant-appellee/appellant.*

EDMUNDS, Judge.

Plaintiff Joe W. Reynolds (Reynolds) is the president and sole shareholder of plaintiff Southern Furniture Hardware (SFH), a North Carolina corporation. In March 1990, Reynolds began discussing with T. Scott Bain (Bain), Vice-President of defendant Branch Banking and Trust Company (BB&T), the possibility of obtaining a loan for SFH in the amount of $1,000,000. Part of this loan would be used to pay off SFH's existing indebtedness to Figgie Acceptance Corporation (Figgie), and the remainder would be earmarked for working capital.

During their discussions, Reynolds informed Bain that time was of the essence because Figgie was discontinuing its asset-based lending. On 20 June 1990, Bain delivered a loan commitment letter to Reynolds, and on 13 July 1990, Reynolds signed an acceptance of the terms and conditions of the commitment letter. During the next three and one-half weeks, Reynolds provided to Bain all requisite information and documentation and obtained the pay-off amount necessary to extinguish its loan from Figgie. On 7 September 1990, Bain was notified by Don B. Beam, Jr. (Beam), BB&T's vice president who had authority to approve the loan, that Beam had decided not to issue final co-approval of the loan. As a result, by January 1991, even though Bain repeatedly had assured Reynolds that the loan was being processed without complications, no closing date had been set, and the loan from Figgie had not been funded within the time prescribed in the estoppel letter Reynolds received from Figgie.

The loan was still unfunded in May 1991. Figgie performed an audit and increased pressure on Reynolds to complete payment on

the loan. Plaintiffs employed counsel, who contacted Bain requesting immediate response from BB&T. Bain answered with further assurances the loan was proceeding smoothly. On 22 July 1991, BB&T requested a second mortgage on Reynolds' home in order to complete the loan processing. Reynolds accepted the new terms, which included a requirement of substantially more collateral. On 22 August 1991, defendant finally funded plaintiffs' loan, which was to mature on 1 September 1992. On 26 August 1991, plaintiffs' obligation to Figgie was paid off.

Although Bain repeatedly had assured plaintiffs they would be able to renew the loan on more favorable terms, as the time to renew the loan approached, on 10 August 1992, plaintiffs received from BB&T a letter of commitment substantially different from the original agreement between the parties, including a higher interest rate, increased collateral, and only a six-month extension of credit terms. Plaintiffs agreed to the unfavorable terms. Although Bain assured plaintiffs in a 22 January 1993 letter that the parties were in a long-term relationship, on 14 September 1993, BB&T called plaintiffs' note.

On 15 April 1994, plaintiffs filed suit against BB&T alleging *inter alia* fraud, negligent or intentional misrepresentation, breach of contract, unfair and deceptive trade practices, negligence, and intentional or negligent infliction of emotional distress. Defendant answered on 15 June 1994, asserting the defenses of contributory negligence, lack of consideration, misrepresentation, statute of limitations, and antecedent breach of contract. On 22 August 1995, defendant moved for summary judgment. On 3 January 1996, the trial court entered an order granting defendant's motion as to plaintiffs' claims of tortious interference with contract and breach of contract, and denying defendant's motion as to the remainder of plaintiffs' claims.

Trial began on 11 August 1997. At the close of plaintiffs' evidence, defendant moved for a directed verdict. The trial court orally granted defendant's motion as to plaintiffs' claim for intentional and/or negligent infliction of emotional distress and denied the motion on the remaining claims. Defendant presented no evidence, and the following issues were presented to the jury:

1. Did Defendant BB&T demand payment of or "call" Southern Furniture Hardware's loan for one million dollars at the

**SOUTHERN FURN. HDWE., INC. v. BRANCH BANKING & TR. CO.**

[136 N.C. App. 695 (2000)]

September 13, 1993 meeting between Joe Reynolds, Scott Bain, and Lance Sellers?

ANSWER: YES __X__ NO _____

2. Could Southern Furniture Hardware have obtained a loan from another lender in August of 1991 at prime plus 1.75% without the additional collateral requirement of a $10,000 deed of trust on his residence and without a cap of $175,000 being placed on inventory?

ANSWER: YES __X__ NO _____

3. Was Southern Furniture Hardware induced to execute the August 1991 loan documents . . . by the fraudulent representations of BB&T?

ANSWER: YES __X__ NO _____

ANSWER THIS ISSUE ONLY IF YOU HAVE ANSWERED "YES" TO ISSUE NUMBER 3. IF YOU ANSWERED "NO" TO ISSUE NUMBER 3, LEAVE THIS ISSUE BLANK AND PROCEED TO ISSUE NUMBER 5.

4. In what amount, if any, has Southern Furniture Hardware been injured as a result of the acts and/or omissions of Defendant?

ANSWER: $ 137,500

5. Could Southern Furniture Hardware have obtained a loan from another lender in August of 1992 of prime plus 1.75% without the additional collateral requirement of deeds of trust on the four warehouses and without the additional equipment collateral?

ANSWER: YES _____ NO __X__

6. Was Southern Furniture Hardware induced to execute the August 1992 commitment letter and the December 1992 loan documents by the fraudulent representations of BB&T?

ANSWER: YES __X__ NO _____

ANSWER THIS ISSUE ONLY IF YOU HAVE ANSWERED "YES" TO ISSUE NUMBER 6. IF YOU ANSWERED "NO" TO ISSUE NUMBER 6, LEAVE THIS ISSUE BLANK AND PROCEED TO ISSUE NUMBER 8.

7. In what amount, if any, has Southern Furniture Hardware been injured as a result of the acts and/or omissions of Defendant?

ANSWER: $ 383,000

ANSWER THIS ISSUE ONLY IF YOU HAVE ANSWERED "YES" TO EITHER ISSUE NUMBER 5 OR ISSUE NUMBER 6. IF YOU ANSWERED "NO" TO BOTH ISSUE NUMBER 5 AND ISSUE NUMBER 6, LEAVE THIS ISSUE BLANK AND DO NOT PROCEED.

8. Was the Defendant's fraudulent inducement accompanied by outrageous or aggravated conduct?

ANSWER: YES __X__ NO _____

ANSWER THIS ISSUE ONLY IF YOU HAVE ANSWERED "YES" TO ISSUE NUMBER 8. IF YOU ANSWERED "NO" TO ISSUE NUMBER 8, LEAVE THIS ISSUE BLANK AND DO NOT PROCEED.

9 What amount of punitive damages, if any, does the jury in its discretion award Southern Furniture Hardware?

ANSWER: $ 325,000

On 28 August 1997, the jury answered the issues as indicated above, awarding plaintiffs $520,000 in compensatory and $325,000 in punitive damages.

On 5 September 1997, defendant filed a "Motion For Judgment Notwithstanding The Verdict, Together With Conditional Grant Of New Trial, Or, In The Alternative, For A New Trial," pursuant to N.C. Gen. Stat. § 1A-1, Rules 50 and 59 (1999). In an order dated 27 March 1998, the trial court granted defendant's motion with respect to jury issues 2, 3, and 4, relating to plaintiffs' claims on the 1991 loan agreement. On the remaining issues, the trial court's order stated:

[T]he Court, in its discretion, is prepared to enter a judgment for Plaintiff Southern Furniture Hardware awarding a total amount of $360,000 (representing $120,000 in actual damages and $240,000 in punitive damages). Plaintiffs shall have twenty days from the date of this order to notify the Court and Defendant in writing if it accepts or rejects entry of judgment in the amount of $360,000. If Plaintiffs decline to accept entry of a judgment in that amount, the Court will set the verdict aside and order a new trial

SOUTHERN FURN. HDWE., INC. v. BRANCH BANKING & TR. CO.

[136 N.C. App. 695 (2000)]

pursuant to Rule 59. The Court will enter a further order with regard to the grounds for new trial of these issues, if necessary. If Plaintiffs accept entry of judgment in the amount of $360,000, Defendant shall have ten days in which to notify the Court whether it will pay the judgment. If Defendant declines to pay the judgment, the motion for new trial will be denied and Judgment entered with respect to these issues on the jury's verdict.

Plaintiffs rejected the trial court's proposed remittitur, and the court, on 7 May 1998, ordered a new trial on the remaining issues. Plaintiffs filed notices of appeal with respect to both orders. Defendant filed notice of appeal as to the trial court's orders partially denying its motion for summary judgment, motion for directed verdict, and motion for judgment notwithstanding the verdict.

I.

**[1]** We first address the issue that arose prior to trial. On 13 January 1997, defendant filed a motion *in limine* to exclude testimony of J. Finley Lee, Ph.D., a witness for plaintiffs who was expected to provide expert testimony as to plaintiffs' losses. The trial court granted the motion, and Dr. Lee prepared a new analysis to address the concerns that had led the trial court to grant defendant's motion. Before trial began, defendant again objected to Dr. Lee's testimony, and the trial court again ruled that Dr. Lee would not be permitted to testify.

Plaintiffs contend the trial court erred in granting defendant's motion *in limine*. However, North Carolina appellate courts have held that motions *in limine* are not appealable:

While the North Carolina Rules of Evidence do not explicitly provide for motions *in limine*, their use in North Carolina is well recognized. Rulings on these motions, however, are merely preliminary and subject to change during the course of trial, depending upon the actual evidence offered at trial and thus an objection to an order granting or denying the motion "is insufficient to preserve for appeal the question of the admissibility of evidence." A party objecting to an order granting or denying a motion *in limine*, in order to preserve the evidentiary issue for appeal, is required to object to the evidence at the time it is offered at the trial (where the motion was denied) or attempt to introduce the evidence at the trial (where the motion was granted). On appeal the issue is not whether the granting or denying of the motion *in limine* was error, as that issue is not appealable, but instead

whether the evidentiary rulings of the trial court, made during the trial, are error.

*T&T Development Co. v. Southern Nat. Bank of S.C.*, 125 N.C. App. 600, 602-03, 481 S.E.2d 347, 348-49 (1997) (internal citations omitted); *see also State v. Hayes*, 350 N.C. 79, 511 S.E.2d 302 (1999); *Heatherly v. Industrial Health Council*, 130 N.C. App. 616, 504 S.E.2d 102 (1998). Because plaintiffs' brief only challenges the trial court's grant of defendant's motion *in limine*, this assignment of error is overruled.

## II.

**[2]** Plaintiffs also contend the trial court erred by directing a verdict in favor of defendant on the issue of intentional or negligent infliction of emotional distress. Initially, we note that there is no written order granting in part and denying in part defendant's motion for a directed verdict. When an oral order is not reduced to writing, it is non-existent, *see State v. Gary*, 132 N.C. App. 40, 42, 510 S.E.2d 387, 388, *cert. denied*, 350 N.C. 312, —— S.E.2d —— (1999), and thus cannot support an appeal, *see Munchak Corp. v. McDaniels*, 15 N.C. App. 145, 148, 189 S.E.2d 655, 657 (1972); *see also West v. Marko*, 130 N.C. App. 751, 504 S.E.2d 571 (1998). However, the trial court's 27 March 1998 order stated, "Except for the claims for fraudulent inducement of two loan agreements and a Chapter 75 claim based on those claims, Defendant's motion [for directed verdict] was granted with respect to all of the remaining claims, including the individual Plaintiff's claims for intentional infliction of emotional distress." Because neither party addressed the invalidity of the trial court's oral order, we treat this language as sufficient to support plaintiffs' appeal on the issue of emotional distress, but nonetheless find plaintiffs' argument without merit.

To prove a claim for intentional infliction of emotional distress, a plaintiff must show that the defendant: "(1) engaged in extreme and outrageous conduct, (2) which was intended to cause and did cause (3) severe emotional distress." *Bryant v. Thalhimer Brothers, Inc.*, 113 N.C. App. 1, 6-7, 437 S.E.2d 519, 522 (1993) (citation omitted). "The tort may also lie where a 'defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress.' " *Id.* at 7, 437 S.E.2d at 522-23 (quoting *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981)). Plaintiffs must then show a resulting "emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of

severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990).

In this case, Reynolds offered evidence of intentional or recklessly indifferent conduct by defendant, including evidence that even after internal approval of the loan had been withdrawn, Bain continued to discuss the loan with Reynolds and imply to Reynolds that the loan would be forthcoming soon. Reynolds also presented evidence that defendant's conduct had an impact on his emotional and physical well-being. However, this evidence fails to establish that BB&T's behavior " 'exceed[ed] all bounds usually tolerated by decent society.' " *Stanback v. Stanback*, 297 N.C. 181, 196, 254 S.E.2d 611, 622 (1979) (citation omitted). In light of this standard, we cannot say the court erred in granting a directed verdict on this issue. This assignment of error is overruled.

## III.

[3] We turn next to post-trial proceedings. Plaintiffs contend the trial court erred in granting defendant's motion for judgment notwithstanding the verdict (JNOV). Following a jury verdict awarding damages to plaintiffs, defendant filed a "Motion For Judgment Notwithstanding The Verdict, Together With Conditional Grant Of New Trial, Or, In The Alternative, For A New Trial," pursuant to Rules 50 and 59. As to issues 2, 3, and 4, the court entered an order stating in pertinent part:

> 1. Defendant's Motion for Judgment Notwithstanding the Verdict, or a new trial pursuant to Rule 50 with respect to Issues No. 2, 3 and 4 is granted. Judgment is hereby entered dismissing Plaintiffs [sic] claims under the 1991 loan agreements. Alternatively, and additionally, the Court finds that Defendant is entitled to a new trial on Issues No. 2, 3, and 4 under Rule 59.

Although the court's apparent intent was to grant defendant a JNOV and order a new trial if the JNOV were not upheld on appeal, we have held that the content of such an order must be specific. *See Streeter v. Cotton*, 133 N.C. App. 80, 514 S.E.2d 539 (1999). Rule 50(c)(1) states in pertinent part:

> If the motion for judgment notwithstanding the verdict, provided for in section (b) of this rule, is granted, the court shall also rule

on the motion for new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial.

N.C. Gen. Stat. § 1A-1, Rule 50(c)(1). The order in the case at bar, which grants both a JNOV and a new trial, fails to conform to this Rule.

We find *Streeter* instructive. In that case, the plaintiff sued for damages as a result of an automobile accident, and the jury returned a verdict in favor of the defendant, finding no negligence. The plaintiff moved for JNOV pursuant to Rule 50 and for a new trial pursuant to Rule 59. The trial court allowed both motions, stating that the issues of the defendant's negligence and the plaintiff's injuries were to be recalendered. We vacated and remanded, holding that by granting the JNOV, the trial court found that defendant was negligent as a matter of law, but that by granting a new trial, the court returned the issue of negligence to a jury; therefore, the court's order was "legally inconsistent." *Streeter*, 133 N.C. App. at 83, 514 S.E.2d at 542.

In the case at bar, the trial court's order granting JNOV is a judicial determination that defendant did not act fraudulently, while the order "[a]lternatively, and additionally" granting a new trial simultaneously returned the issue of fraud to a new jury. Thus, the order in the case at bar, like that in *Streeter*, is legally inconsistent. Further, by granting a new trial both as an alternative to, and in addition to, the JNOV, the trial court did not follow the dictates of Rule 50(c)(1), which requires that a new trial be granted "if the [JNOV] is thereafter vacated or reversed." N.C. Gen. Stat. § 1A-1, Rule 50(c)(1). Accordingly, we vacate the court's order and remand for a rehearing on defendant's motion for JNOV and new trial as to issues 2, 3, and 4. On remand, the trial court may either (1) grant defendant's JNOV motion and conditionally grant or deny defendant's motion for new trial in the event the trial court's JNOV judgment is thereafter vacated or reversed on appeal, or (2) deny defendant's motion for JNOV and grant or deny defendant's motion for new trial. *See Streeter*, 133 N.C. App. at 83, 514 S.E.2d at 542.

[4] Finally, plaintiffs contend the court erred in granting a new trial on issues 1, 5, 6, 7, 8, and 9 following plaintiffs' refusal to accept the trial court's suggested remittitur. Although grant of a new trial is reviewed for abuse of discretion, *see Williams v. Randolph*, 94 N.C.

App. 413, 423, 380 S.E.2d 553, 560 (1989), in the case at bar, the court granted a new trial on these issues only after it had attempted to compel a certain result. The court forthrightly stated in its 27 March 1998 order that it was prepared to enter judgment for plaintiffs in an amount less than that returned by the jury. If plaintiffs declined the court's suggestion, the court stated it would order a new trial as to issues 1, 5, 6, 7, 8, and 9; if plaintiffs accepted but defendant declined, the court stated it would enter judgment against defendant in accordance with the jury verdict. When plaintiffs rebuffed the court's suggestion, the court on 4 May 1998 ordered a new trial as to those issues.

We are aware that trial judges can and often do provide valuable off-the-record guidance to litigants during the course of a trial, and such guidance may be entirely proper. *See, e.g., Griffin v. Sweet,* 120 N.C. App. 166, 461 S.E.2d 32 (1995). In the case at bar, the court appropriately could have conducted informal discussions with the parties as to defendant's "Motion For Judgment Notwithstanding The Verdict, Together With Conditional Grant Of New Trial, Or, In The Alternative, For A New Trial." However, the trial court went further and delivered an ultimatum: the parties were to reach a particular result or suffer the consequences. The court's attempt to impose the resolution suggested in its 27 March 1998 order was improper. Assuming the parties were at loggerheads, the court should have ruled on defendant's motion as a question of law applied to the facts. Instead, the court attempted to compel a remittitur, which is not permitted without the consent of the prevailing party. *See Gardner v. Harriss,* 122 N.C. App. 697, 471 S.E.2d 447 (1996). Therefore, we hold that the trial court abused its discretion when it ordered a new trial as to issues 1, 5, 6, 7, 8, and 9 as a result of plaintiffs' withholding consent to the proposed remittitur, and, therefore, remand for a new hearing on defendant's motion as to these issues.

To summarize, we vacate the trial court's orders on "Defendant's Motion For Judgment Notwithstanding The Verdict, Together With Conditional Grant Of New Trial, Or, In The Alternative, For A New Trial." As to issues 2, 3, and 4, the order fails because it is internally inconsistent and fails to comply with the strict requirements of Rule 50(c)(1). As to the remaining issues, although we have no doubts about the objectivity of the trial court in this matter, we are compelled to acknowledge that the trial court's order gives the appearance that the court was actively involved in seeking a particular outcome to this case. Accordingly, to avoid any appearance of impro-

priety, we suggest that a different superior court judge be assigned to conduct the reconsideration of defendant's motion.

IV.

[5] Defendant also filed an appeal. Although a number of issues have been abandoned, *see* N.C. R. App. P. 28(b)(5), defendant purports to challenge (1) the trial court's denial of defendant's motion for summary judgment on the issues of fraud, (2) the trial court's denial of defendant's motion for a directed verdict on the issues of fraud, and (3) the trial court's denial of defendant's motion for JNOV as to jury issues 1, 5, 6, 7, 8, and 9. This Court previously has observed that a trial court's denial of a motion for summary judgment need not be addressed when the moving party thereafter makes a motion for directed verdict. *See Davidson and Jones, Inc. v. N.C. Dept. of Administration*, 69 N.C. App. 563, 569, 317 S.E.2d 718, 722 (1984), *aff'd in part, rev'd in part on other grounds*, 315 N.C. 144, 337 S.E.2d 463 (1985); *see also Waters v. Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 344 (1980). Because we have vacated the trial court's post-trial orders regarding fraud and have ordered a new hearing on defendant's motion for JNOV or new trial, defendant's appeal is interlocutory as to those issues and is therefore dismissed. Likewise, because we are remanding for a new hearing on defendant's motion for JNOV and because defendant's motion for a directed verdict encompassed the same issues as will be addressed on rehearing, we decline to address defendant's challenge of the denial of its motion for a directed verdict.

V.

[6] Finally, defendant has filed a motion to dismiss plaintiffs' appeal on grounds that the notices of appeal were not timely and failed to provide sufficient notice of the orders from which the appeal was taken. Upon review of plaintiffs' notices, we hold that while the notices of appeal were not models of clarity, they were sufficient to satisfy the requirements of N.C. R. App. P. 3(d). The motion to dismiss is denied.

Plaintiffs' appeal is affirmed in part, vacated in part, and remanded.

Defendant's appeal is dismissed.

Judges GREENE and SMITH concur.