TERRY'S FLOOR FASHIONS, INC., PLAINTIFF v. CROWN GENERAL CONTRACTORS, INC. AND JERRY SHUMATE ALVIS, DEFENDANTS

No. COA06-738

(Filed 19 June 2007)

**1. Liens— subcontractor—subrogation—gross payment deficiency—sufficiency of findings of fact**

The trial court did not err by finding that plaintiff subcontractor had a right to file a subrogation lien on the pertinent real property based on gross payment deficiency owed to defendant general contractor by defendant owner, because: (1) the default judgment entered in defendant owners' favor against defendant general contractor is irrelevant to the question of whether the findings of fact contained in the trial court's N.C.G.S. § 1A-1, Rule 52(a) judgment are supported by competent evidence; and (2) the trial court's findings of fact with respect to a 14 January 2003 letter were supported by competent evidence, and the trial court sitting as the trier of fact during the bench trial was entitled to believe plaintiff's evidence and assign it greater weight than the evidence presented by defendant owner.

**2. Setoff and Recoupment— calculation—sufficiency to extinguish right to subrogation—liquidated damages**

The trial court did not err in a case concerning the enforcement of a subcontractor's subrogation lien on real property by its calculation of the amount to which defendant property owner was entitled as a setoff to the prime contract price for damages he incurred as a result of defendant general contractor's breach,

1

because: (1) with respect to liquidated damages, plaintiff presented evidence through multiple letters written by defendant contractor, and through the testimony of several witnesses, that defendant property owner caused the construction delay by failing to make timely decisions in selecting materials required to be specially ordered or produced, failing to address in a timely manner a pre-existing moisture problem affecting the building's foundation, and failing to provide accurate hardware specifications such that specially ordered hardware needed to be returned and reordered; (2) where a contract contains a provision for liquidated damages and delays in its completion are occasioned by mutual defaults, the courts will not attempt to apportion the damages, and the obligation for liquidated damages is annulled in the absence of a contract provision for apportionment; (3) plaintiff presented competent evidence from which the trial court could calculate a setoff in the amount of $9,827; and (4) although defendant property owner presented evidence to support a larger setoff, the trial court was charged with determining the credibility of the witnesses and the weight to be given to the evidence.

3. **Collateral Estoppel and Res Judicata— entry of default judgment on cross-claim—Rule 52(a) judgment not a relitigation of issues or claims**

The trial court did not err in a case concerning the enforcement of a subcontractor's subrogation lien on real property by awarding judgment under N.C.G.S. § 1A-1, Rule 52(a) in favor of plaintiff subcontractor even though it entered default judgment in favor of defendant property owner against defendant general contractor, because: (1) contrary to defendant property owner's assertion, the facts in this case do not create an internal inconsistency and are not governed by *Streeter v. Cotton*, 133 N.C. App. 80 (1999); and (2) although defendant property owner contends res judicata and collateral estoppel show that entry of default judgment on his cross-claim determines the merits of plaintiff's claim, the claims filed by plaintiff and cross-claim filed by defendant property owner were in a single action, and the Rule 52(a) judgment does not represent a relitigation of issues or claims.

4. **Costs— attorney fees—unreasonable refusal to fully resolve matter out of court**

The trial court did not abuse its discretion in a case concerning the enforcement of a subcontractor's subrogation lien on real property by awarding plaintiff $17,000 in attorney fees under

**TERRY'S FLOOR FASHIONS, INC. v. CROWN GEN. CONTR'RS, INC.**

[184 N.C. App. 1 (2007)]

N.C.G.S. § 44A-35 based upon its finding that defendant property owner unreasonably refused to fully resolve the matter out of court, because: (1) the trial court reasoned that since defendant's own consultant informed him on 2 November 2004 that it would only cost about $7,000 to remedy defendant general contractor's deficient performance under the prime contract, · it was unreasonable for defendant property owner to insist that defendant general contractor's deficient performance extinguished his obligations under the prime contract; and (2) the reasonableness of the award is not addressed since defendant property owner did not assign error to or mention in his brief the amount of the award.

Judge TYSON concurring in part and dissenting in part.

Appeal by defendant from order entered 27 October 2003 by Superior Court Judge Narley L. Cashwell and judgment entered 28 September 2005 by District Court Judge Jane P. Gray in District Court, Wake County. Heard in the Court of Appeals 24 January 2007.

*Ragsdale Liggett PLLC by Walter L. Tippett, Jr. and Caroline Barbee for plaintiff-appellee.*

*Young Moore and Henderson, P.A. by David M. Duke and Shannon S. Frankel for defendant-appellant.*

STROUD, Judge.

This case concerns enforcement of a subcontractor's subrogation lien on real property. The dispositive questions before this Court are (1) whether the trial court's finding that the property owner owed a gross payment deficiency to the general contractor was supported by competent evidence; (2) whether the trial court's entry of judgment against the property owner in favor of the subcontractor pursuant to N.C. Gen. Stat. § 1A-1, Rule 52(a) (2005) following a bench trial is inconsistent with the trial court's entry of default judgment against the general contractor in favor of the property owner; and (3) whether the trial court abused its discretion by awarding the subcontractor $17,000.00 in attorneys' fees based upon a finding that the property owner "unreasonably refused to fully resolve the matter" out of court. We conclude that the trial court's findings of fact are supported by competent evidence, that the Rule 52(a) and default judgments are not inconsistent with one another, and that the trial court did not abuse its discretion by awarding attorneys

fees. Accordingly, we affirm the trial court's entry of judgment against the property owner.

## I. Background

On or about 25 July 2002, defendant property owner Jerry Shumate Alvis [defendant Alvis] contracted with defendant general contractor Crown General Contractors, Inc. [defendant Crown] to complete an "interior [f]it-up" of an office suite owned by defendant Alvis for use as a dental office [hereinafter Prime Contract]. The Prime Contract price was $195,296.00, which was to be paid by defendant Alvis in monthly installments upon certification of defendant Crown's progress by project architect Dick Tilley, who worked for Millennium Architecture, P.A., and who "administer[ed] the construction phase of the [fit-up] as a representative for [defendant] Alvis." The Prime Contract provided that the "[f]it-up" would be substantially completed within one hundred calendar days of commencement of the project, and expressly stated that "[t]ime is of the essence."

On 22 August 2002, defendant Crown contracted with plaintiff subcontractor Terry's Floor Fashions, Inc. to install flooring and baseboard moldings in the dental office [hereinafter Subcontract]. The original Subcontract price for materials and installation was $4,765.00; however, defendant Crown later approved change orders that increased the contract price to $7,921.00.

On 3 September 2002, defendant Crown sent a letter to defendant Alvis describing several structural problems with the office suite, including water ponding under the building slab and lack of drainage grading to move water away from the building. In the letter, defendant Crown proposed ideas to correct the problem and requested "a quick response to our joint problem" from defendant Alvis. On 1 November 2002, defendant Crown sent a second letter to defendant Alvis concerning "[r]e-occuring moisture problems at new Duraleigh office" for the purpose of "document[ing] the situation and mak[ing] all parties aware."

On 5 November 2002, the substantial completion deadline under the Prime Contract, defendant Crown sent a third letter to defendant Alvis stating that it was unable to complete the project on time, "[d]ue to previously documented un-answered issues." The letter further provided that defendant Crown would "be able to produce a schedule for completion after the floor moisture issue is addressed."

TERRY'S FLOOR FASHIONS, INC. v. CROWN GEN. CONTR'RS, INC.

[184 N.C. App. 1 (2007)]

On 19 November 2002, defendant Crown sent a letter to Tilley discussing the floor moisture issue and requesting defendant Alvis' decision as to how defendant Crown should proceed. The letter provided:

> Enclosed please find a letter from Terry's Floor Fashions regarding the moisture problem in the slab at this job site. There is no solution within [Terry's] letter and Crown has no solution either. The building moisture problem was a pre-existing condition and the choice of how to deal with this is solely up to . . . Dr. Alvis or his advisors. If the building developer cannot remedy the moisture problem the only remaining choice would be to consider the next best way of dealing with this. The suggestions shown in the attached letter could be considered a last resort. Crown will not warrant the flooring unless . . . [Terry's] is willing to warrant it.

The attached letter from plaintiff to defendant Crown stated that plaintiff would "not warrant any product glued directly to the substrate per manufacturer requirements" due to "off the scale" moisture readings in the concrete pad and would install the flooring only "if warranty is voided and signed by the owner." Thereafter, Tilley contacted the developer of the office suite who installed a concealed drain with inlets into the concrete pad. The developer also re-graded the lot and "waterproofed" the building's exterior. Subsequent moisture testing completed by an independent contractor at defendant Alvis' request resulted in an acceptable moisture reading. Upon receiving notice of the normal moisture reading, plaintiff installed the flooring.[1]

Plaintiff completed the flooring installation on or about 12 December 2002. Shortly thereafter, defendant Crown advised Tilley that it would not be able to complete the project. At that time, defendant Alvis had paid $172,094.00 pursuant to four previous payment applications certified by Tilley. On 30 December 2002, Tilley certified defendant Crown's fifth payment application for $10,752.00, which showed that defendant Crown had substantially completed all work under the Prime Contract except installation of appliances. The payment application also listed the balance of the contract price as

---

1. There is additional evidence in the record to support an inference that delay on the part of defendant Alvis slowed construction. For example, correspondence between the parties shows that on 16 October 2002 defendant Alvis had not yet selected floor tiling and on 1 November 2002, defendant Alvis had not yet selected materials for casework. Further, on 21 November 2002, it became apparent that Tilley had provided defendant Crown with the wrong finish specifications for hardware, which then needed to be uninstalled and replaced. All of these materials needed to be ordered and some of the materials needed to be specially produced.

$12,450.00, which included a $2,827.00 allowance for appliances and $9,623.00 for retainage.

Defendant Alvis never remitted the fifth payment. Instead, defendant Alvis, through Tilley, sought a sixth and final payment application from defendant Crown, showing a $0.00 balance. Notes made by Tilley following a meeting between himself and Robert O. Mitchell, who was defendant Crown's president, state, "If Apps. are zeroed out as Bal. Due = 0.00, no liens can be filed against client." (Emphasis added.)

Immediately thereafter, defendant Crown sent a letter to Tilley. The letter stated that defendant Crown had been "paid in full for all services rendered" as of the letter date, 14 January 2003. It further stated,

[w]e will not be able to complete the project unless you are willing to pay the subs and suppliers directly for the remainder of the project. We will stay on record as your General Contractor and provide all necessary supervisory and project management support as required by yourself to complete the job.

The project architect forwarded defendant Crown's letter to defendant Alvis, but included a notation that defendant Crown "has not sent a Final [Payment] Application showing a $0.00 balance as he indicated he would."

Neither defendant Crown nor defendant Alvis has paid plaintiff for the flooring installation; however, defendant Alvis opened a dental practice in the office on 23 December 2002, seven days before Tilley certified defendant Crown's fifth payment application for work completed as of 24 December 2002. On 1 April 2003, plaintiff filed a subcontractor's lien on defendant Alvis' dental office in the amount of $7,921.00 (the Subcontract price) pursuant to Chapter 44A of the North Carolina General Statutes, claiming "a right of subrogation to the lien held by the general contractor [defendant Crown] on the real property."[2]

---

2. N.C. Gen. Stat. § 44A-8 provides that a general contractor or other

person who performs or furnishes labor . . . or furnishes materials . . . pursuant to a contract, either express or implied, with the owner of real property for the making of an improvement thereon shall, upon complying with the provisions of this Article, have a right to file a claim of lien on real property on the real property to secure payment of all debts owing for labor done . . . or material furnished.

On 6 June 2003, plaintiff filed a civil action in District Court, Wake County pursuant to N.C. Gen. Stat. § 44A-13 to enforce the lien. In its verified complaint plaintiff also alleged claims against defendant Crown for breach of contract, against defendant Alvis for unfair and deceptive trade practices, and against both defendants for *quantum meruit*. Finally, plaintiff sought recovery of attorneys fees pursuant to N.C. Gen. Stat. § 44A-35, alleging that defendant Alvis "unreasonably refused to fully resolve the matters which constitute the basis of the Lien part of this Complaint."

Defendant Alvis filed an answer, motion, counterclaim, and cross-claim on 8 August 2003. As an initial matter, defendant Alvis alleged that the counterclaims and cross-claims stated in his pleading raised the amount in controversy beyond $10,000.00; thus, defendant Alvis moved that the dispute be transferred to superior court. This motion was subsequently denied by Superior Court Judge Narley L. Cashwell on 27 October 2003. Defendant Alvis then asserted two counterclaims against plaintiff for negligence and breach of contract and also asserted cross-claims against defendant Crown.

Defendant Crown did not answer either plaintiff's complaint or defendant Alvis' cross-claims. On 22 August 2003, plaintiff moved for entry of default against defendant Crown, which the Clerk of Court issued that same day. On or about 17 October 2003, Judge Jane P. Gray entered the default judgment against defendant Crown in the amount of $7,921.00 plus costs, interest, and reasonable attorneys fees.

Plaintiff filed a reply to defendant Alvis' counterclaims on 7 October 2003, denying the allegations contained therein and affirmatively raising six defenses: absence of consideration, breach of contract, unclean hands, estoppel, setoff, and contributory negligence.

On 1 November 2004, defendant Alvis filed a motion for summary judgment as to all of plaintiff's claims. In support of his motion, Defendant Alvis stated that defendant Crown "did not have a lien

---

N.C. Gen. Stat. § 44A-23 provides that

> A first tier subcontractor, who gives notice of claim of lien upon funds as provided in this Article, may, to the extent of this claim, enforce the claim of lien on real property of the contractor created by Part 1 of this Article. . . . [U]pon the filing of the claim of lien on real property, with the notice of claim of lien upon funds attached, and the commencement of the action, no action of the contractor shall be effective to prejudice the rights of the subcontractor without his written consent.

**TERRY'S FLOOR FASHIONS, INC. v. CROWN GEN. CONTR'RS, INC.**

[184 N.C. App. 1 (2007)]

claim on the Project at the time of Plaintiff's filing of alleged Claim of Lien and Notice of Claim of Lien by First Tier Subcontractor, and that no funds were owed by the Owner to the General Contractor, for which Plaintiff, as first tier subcontractor, could subrogate any alleged lien claims." In conjunction with his motion for summary judgment, defendant Alvis submitted the 14 January 2003 letter from defendant Crown to Tilley and the report of John F. Sinnett, an architect retained by defendant Alvis to inspect his dental office and review the construction plans and Prime Contract. In the report dated 2 November 2004, Sinnett concluded that "[t]otal repairs and supervision will run between $6,800.00 and $7,300.00."

On 4 November 2004, plaintiff filed a motion for summary judgment as to all counterclaims asserted by defendant Alvis. In support of its motion, plaintiff stated (1) defendant Alvis' claims are barred by the economic loss rule, (2) defendant Alvis lacked standing to bring the counterclaims at issue, and (3) discovery showed that defendant Alvis could not produce evidence of the essential elements of his counterclaims. That same day, plaintiff also moved for judgment on the pleadings as to defendant Alvis' counterclaims.

On 8 November 2004, defendant Alvis moved for entry of default on his cross-claims against defendant Crown, and the Clerk of Court entered default against Crown on 18 November 2004. On 28 September 2005, Judge Jane P. Gray entered the default judgment against defendant Crown in the amount of $9,827.00 plus costs, interest, and reasonable attorneys fees.

On 22 November 2004, the trial court granted plaintiff's motion for judgment on the pleadings, dismissing defendant Alvis' counterclaims with prejudice. On or about 6 June 2005, the court partially granted defendant Alvis' motion for summary judgment as to plaintiff's claim for *quantum meruit.*

The parties' remaining claims were heard by bench trial in district court on 15 and 16 August 2005, Judge Jane P. Gray presiding, after which the court announced its ruling in favor of plaintiff. Thereafter, plaintiff filed a motion to recover attorneys fees pursuant to N.C. Gen. Stat. § 44A-35. In support of its motion, plaintiff alleged that defendant Alvis had "unreasonably refus[ed] to fully resolve [the] matter which constituted the basis of this suit." In addition to the testimony admitted at trial, plaintiff directed the court's attention to a letter and an e-mail received by plaintiff from defendant Alvis' initial

counsel. The correspondence, dated 26 June 2003 and 4 August 2003 respectively, stated,

> In view of all the circumstances, [defendant Alvis] will make no voluntary payment to any party. If there is not a dismissal, then there will be a litigation of everyone's claims to judgment.

and

> If we must file pleadings, then we will be looking to your client for a settlement payment to [defendant Alvis], and that is the only settlement we will consider. If your client ever makes recovery against [defendant Alvis] it will be after trial court judgment and exhaustion of all appeals.

Plaintiff further argued that unreasonable conduct on the part of defendant Alvis led to unusually high attorneys fees. In particular, plaintiff emphasized that (1) defendant Alvis sought to remove the matter to superior court without cause, (2) defendant Alvis asserted meritless counterclaims, (3) defendant Alvis pursued meritless motions to dismiss and motions for summary judgment of the claims against him, and (4) defendant Alvis employed three different sets of counsel during the course of this litigation. Plaintiff sought attorneys fees in the amount of $26,173.75.

On 28 September 2005, the trial court entered judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule 52(a) against defendant Alvis for compensatory damages in the amount of $7,921.00. The court decreed that the award is "a lien on the Subject Property" which "may be enforced by foreclosure of the Property" and further decreed that plaintiff "shall have and recover reasonable attorneys' fees in the amount of $17,000.00," to be taxed as court costs against defendant Alvis.

On 25 October 2005, defendant Alvis entered notice of appeal from the order entered by Superior Court Judge Narley L. Cashwell denying his motion to transfer to superior court and from the N.C. Gen. Stat. § 1A-1, Rule 52(a) judgment entered by District Court Judge Jane P. Gray. Because defendant did not discuss in his brief the order denying his motion to transfer, we deem defendant Alvis' assignment of error to that order abandoned. N.C. R. App. P. 28(a). Defendant Alvis raises four questions concerning the Rule 52(a) judgment on appeal: (1) whether the trial court's finding that the property owner owed a gross payment deficiency to the general contractor was supported by competent evidence; (2) whether the trial court's entry of

default judgment against the general contractor in favor of the property owner is consistent with the trial court's entry of judgment against the property owner in favor of the subcontractor pursuant to N.C. Gen. Stat. § 1A-1, Rule 52(a), following a bench trial; and (3) whether the trial court abused its discretion by awarding the subcontractor $17,000.00 in attorneys' fees based upon a finding that the property owner "unreasonably refused to fully resolve the matter" out of court.

## II. Gross Payment Deficiency/Right to Setoff

[1] Defendant Alvis argues that the trial court erred in finding that plaintiff had a right to file a subrogation lien based on a "gross payment deficiency" owed to defendant Crown by defendant Alvis. Specifically, defendant Alvis argues that defendant Crown's 14 January 2003, letter to Tilley and the default judgment entered in defendant Alvis' favor against defendant Crown show that defendant Alvis did not owe any funds to defendant Crown at the time plaintiff filed its lien. Alternatively, defendant Alvis argues that the trial court erred in calculating the amount he was entitled to setoff from the Prime Contract price for damages he incurred as a result of defendant Crown's breach. Defendant Alvis concludes that a properly calculated setoff would extinguish any right to payment possessed by defendant Crown and, correspondingly, plaintiff's right to subrogation. We disagree.

N.C. R. Civ. P., Rule 52(a)(1), provides that "[i]n all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon." When finding facts pursuant to Rule 52(a), the trial judge considers "the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom." *Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968). "If different inferences may be drawn from the evidence, [the trial judge] determines which inferences shall be drawn and which shall be rejected." *Id.*

On appeal, this Court considers whether the trial court's findings of fact are supported by competent evidence. *Hollerbach v. Hollerbach*, 90 N.C. App. 384, 387, 368 S.E.2d 413, 415 (1988). Findings of fact supported by competent evidence are binding on appeal, notwithstanding the existence of contradictory evidence. *Lagies v. Myers*, 142 N.C. App. 239, 246, 542 S.E.2d 336, 341 (2001).

Here, defendant Alvis assigns error to the following findings of fact entered by the trial court:

12. At the time the Lien was filed, Defendant Alvis had paid Defendant Crown $172,094.00, an amount less than the $195,296.00 stipulated in the Prime Contract, leaving a gross payment deficiency owed by Defendant Alvis to Defendant Crown of $23,202.00. After adjustments set forth in paragraph 13 below, at the time the Lien was filed, Defendant Alvis owed Defendant Crown at least $13,375.00 for its performance under the Prime Contract, an amount in excess of the Contract Sum.

13. The Court heard and considered evidence that Defendant Crown breached the Prime Contract, and that, as a result, Defendant Alvis should be credited with the costs of curing the defaults and liquidated damages arising from delays in completion of work at the Subject Property, as well [as] unused contract allowances. The Court finds that the gross payment deficiency of $23,202.00 should be reduced by $7,000.00 for construction deficiencies and $2,827.00 for an appliances credit, which adjusted payment deficiency is $13,375.00. Crown's purported defaults and liquidated damages did not reduce sums otherwise owed to Defendant Crown under the Prime Contract to the extent that Defendant Alvis' remaining payment obligation was less than the Contract Sum at the time the Lien was filed.

Throughout its order the trial uses the phrase "Contract Sum" to refer to the Subcontract price.

The parties agree that defendant Alvis contracted to pay defendant Crown $195,296.00 for the interior "[f]it-up" of an office suite for use as a dental office, and that defendant Alvis only paid defendant Crown $172,094.00 of the Prime Contract price. The difference between the Prime Contract price and the amount actually paid by defendant Alvis is $23,202.00.

In support of the position that he did not owe any portion of the $23,202.00 balance at the time plaintiff filed its lien, defendant Alvis introduced a letter from defendant Crown to Tilley, dated 14 January 2003. As explained above, Tilley solicited the letter from defendant Crown on behalf of defendant Alvis shortly after defendant Crown submitted (and Tilley certified) its fifth application for payment. The letter provided that defendant Crown had been "paid in full for all services rendered," and explained that defendant Crown would "not be able to complete the project unless [defendant Alvis was] willing to pay the subs and suppliers directly for the remainder of the project." Defendant Alvis argues that this letter, taken together with

the default judgment entered on 8 September 2005 in his favor against defendant Crown, proves that he did not owe a payment deficiency under the Prime Contract at the time plaintiff filed its lien.

Initially, we note that the default judgment entered in defendant Alvis' favor against defendant Crown is irrelevant to the question of whether the findings of fact contained in the trial court's Rule 52(a) judgment are supported by competent evidence. During a bench trial, "[t]he trial judge becomes both judge and juror, and it is his duty to consider and weigh all the competent evidence before him." *Knutton*, 273 N.C. at 359, 160 S.E.2d at 33 (1968). Because a default judgment entered after a trial is not "evidence before the [judge]" at trial, we do not consider the default judgment entered against defendant Crown when evaluating the trial court's findings of fact. We consider the effect of the default judgment entered against defendant Crown on the validity of the Rule 52(a) judgment entered against defendant Alvis in section III of this opinion.

With respect to the 14 January 2003 letter from defendant Crown, we conclude that the trial court's findings of fact are supported by competent evidence. In particular, plaintiff presented Tilley's testimony that (1) defendant Alvis never paid defendant Crown for work certified as complete in payment application five ($10,752.00); (2) defendant Alvis never paid defendant Crown retainage that was to be released upon substantial completion of the "fit-up," ($9,623.00); (3) he never certified a final settlement of account or any other document showing a zero account balance owed by defendant Alvis to defendant Crown under the Prime Contract; (4) defendant Crown never agreed that Defendant Alvis was entitled to a zero balance under the Prime Contract; (5) to his knowledge, the 14 January 2003 letter from defendant Crown did not extinguish any liens against funds owed to defendant Crown; and (6) the 14 January 2003 letter from defendant Crown to the project architect expressly provided that defendant Crown would remain contractor of record and provide supervisory support for the "[f]it-up". Plaintiff also introduced notes made by Tilley that state, "If Apps. are zeroed out as Bal. Due = 0.00, no liens can be filed against client."

The trial court, as the trier of fact during the bench trial, was entitled to believe plaintiff's evidence and assign it greater weight than the evidence presented by defendant Alvis. This evidence is competent to support the trial court's finding that defendant Alvis owed a gross payment deficiency to defendant Crown at the time plaintiff filed its lien. Accordingly, this assignment of error is overruled.

**[2]** In support of the position that he is entitled to a setoff against the Prime Contract price that is sufficient to extinguish plaintiff's right of subrogation, defendant Alvis argues that the trial court failed to credit him for several defects in defendant Crown's performance and also failed to credit him for liquidated damages owed by defendant Crown. In particular, defendant Alvis emphasizes that Crown never installed window treatments, a sound system, and appliances; and that Crown never completed casework, and corrective work as required by the Prime Contract. Defendant Alvis testified at trial that the Prime Contract provided allowances for these items in the following amounts: $2,500.00 for window treatments, $1,500.00 for a sound system, and $2,827.00 for appliances. Defendant Alvis also testified that he traded a vehicle worth approximately $2,500.00 in exchange for a handyman's services to fix a broken drain in one of the bathrooms, and that he paid approximately $550.00 to have an air conditioning unit repaired the summer after he moved into the office.

With respect to liquidated damages, defendant Alvis testified that he was unable to move into the dental office until 23 December 2002, forty-eight days after the substantial completion deadline of 5 November 2002. Because the Prime Contract provided for liquidated damages in the amount of $300.00 per day for each calendar day beyond the substantial completion deadline on which defendant Alvis was unable to "occupy and use the premises for the practice of dentistry," Defendant Alvis concludes that he is entitled to a $14,400.00 setoff against the contract price.

In support of the trial court's findings, plaintiff points to a supplemental affidavit defendant Alvis submitted in support of his motion for summary judgment. The affidavit stated that defendant Alvis retained John F. Sinnett, an architect employed by The Smith Sinnett Associates, P.A., to inspect his dental office and to review the construction plans and Prime Contract. Following the inspection, Sinnett sent defendant Alvis a report, which defendant Alvis attached to his supplemental affidavit. In the report Sinnett listed deficiencies in defendant Crown's performance of the Prime Contract and concluded,

> As an architect familiar with construction costs, I estimate the cost of the above-noted repairs will be between $5,500.00 and $6,000.00. Additionally, I would estimate[] eight (8) hours of a general contractors [sic] at a rate of $50.00 per hour and a mark up of fifteen (15) percent of overhead and profit to complete the

above list of repairs. Total repairs and supervision will run between $6,800.00 and $7,300.00.

With respect to liquidated damages, plaintiff presented evidence through multiple letters written by defendant Crown, and through the testimony of Tilley, defendant Alvis, and Michael Lee Chamberlain, who was plaintiff's contract sales representative, that defendant Alvis caused the construction delay. Specifically, the evidence tended to show that defendant Alvis failed to make timely decisions in selecting materials required to be specially ordered or produced, including the tile and casework; defendant Alvis failed to address in a timely manner a pre-existing moisture problem affecting the building's foundation; and Tilley failed to provide accurate hardware specifications, such that specially ordered hardware needed to be returned and reordered.

Because "a contractor is not liable under a clause for liquidated damages based on a time limit if his failure to complete the contract within the specified time was wholly due to the act or omission of the other party in delaying the work," *L. A. Reynolds Co. v. State Highway Com.*, 271 N.C. 40, 50, 155 S.E.2d 473, 482 (1967), plaintiff argued that defendant Alvis waived his right to receive liquidated damages. Moreover, "where a contract contains a provision for liquidated damages, and delays in its completion are occasioned by mutual defaults, the courts will not attempt to apportion the damages, and the obligation for liquidated damages is annulled in the absence of a contract provision for apportionment." *Id.* at 51, 155 S.E.2d at 482. No such provision is present in the contract *sub judice*.

In its order, the trial court found that defendant Alvis was entitled to a setoff in the amount of $7,000.00 for construction deficiencies and a credit in the amount $2,827.00 for appliances that were not installed by defendant Crown. The trial court did not find that defendant Alvis was entitled to a setoff for liquidated damages. Thus, the total amount setoff by the trial court against the contract price was $9,827.00, leaving a net payment deficiency of $13,375.00. This deficiency exceeds the amount claimed by plaintiff in its lien.

Based on the evidence discussed above, and our review of the record in total, we conclude that plaintiff presented competent evidence from which the trial court could calculate a setoff in the amount of $9,827.00. Although defendant Alvis presented evidence to support a larger setoff, the trial judge was charged with determining the credibility of the testimony of Tilley, defendant Alvis, and

Chamberlain, and the weight to be given to the evidence, including the report completed by Sinnett. Accordingly, this assignment of error is overruled.

### III. Consistency of Judgments

[3] Defendant Alvis argues that the trial court's award of judgment, pursuant to N.C. Gen. Stat. § 1A-1, Rule 52(a), in favor of plaintiff against him is inconsistent with the trial court's entry of default judgment in his favor against defendant Crown. In support of this argument, defendant asserts that he cannot simultaneously (1) be liable to plaintiff in subrogation based on a gross payment deficiency owed to defendant Crown under the Prime Contract, and (2) be entitled to compensatory damages from defendant Crown for breach of the Prime Contract. Defendant Alvis concludes that the Rule 52(a) judgment must be vacated. We disagree.

Defendant Alvis cites one case, *Streeter v. Cotton*, 133 N.C. App. 80, 514 S.E.2d 539 (1999), in support of his conclusion. In *Streeter* this Court considered the effect of a single trial court order that simultaneously granted the plaintiff's motion for judgment notwithstanding the verdict [JNOV] and the plaintiff's motion for a new trial. 133 N.C. App. at 83, 514 S.E.2d at 542. Because it is legally inconsistent to determine that a plaintiff is entitled to judgment as a matter of law by awarding JNOV and then submit that same claim to a jury by awarding a new trial, this Court vacated the trial court order and remanded the matter "for rehearing of plaintiff's motions for JNOV and new trial." *Id.* In a similar case, this Court noted, "the [trial] court's apparent intent was to grant defendant a JNOV and order a new trial if the JNOV was not upheld on appeal." *Southern Furniture Hardware, Inc. v. Branch Banking and Trust Co.*, 136 N.C. App. 695, 703, 526 S.E.2d 197, 202 (2000). In so doing, the Court described the order as "internally inconsistent." *Id.* at 705, 526 S.E.2d at 203.

Here, defendant Alvis challenges the validity of separate judgments, resolving the rights of three different parties with respect to a claim and cross-claim: A judgment following bench trial entered against Defendant Alvis pursuant to N.C. Gen. Stat. § 1A-1, Rule 52 and a default judgment entered against Defendant Crown pursuant to N.C. Gen. Stat. § 1A-1, Rule 55. The facts *sub judice* do not create an internal inconsistency and are not governed by *Streeter*.

Defendant Alvis argues that the default judgment he obtained against defendant Crown shows that defendant Crown's breach of the Prime Contract, and the damages he incurred thereby, extinguished

his financial obligations to defendant Crown; therefore, the trial court erred in entering a judgment against him in favor of a plaintiff who was subrogated to defendant Crown's rights under the Prime Contract. To the extent defendant Alvis argues that entry of default judgment on his cross-claim determines the merits of plaintiff's claim, defendant Alvis' argument rests on the doctrines res judicata and collateral estoppel.

"Res judicata estops a party or its privy from bringing a subsequent action based on the 'same claim' as that litigated in an earlier action." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004).. "[C]ollateral estoppel precludes the subsequent adjudication of a previously determined issue, even if the subsequent action is based on an entirely different claim." *Id.* Both are common law doctrines that "advance the twin policy goals of 'protecting litigants from the burden of relitigating previously decided matters and promoting judicial economy by preventing needless litigation.' " *Id.* (quoting *Thomas M. McInnis & Assocs. v. Hall*, 318 N.C. 421, 428, 349 S.E.2d 552, 556 (1986)) (emphasis added). Because the claims filed by plaintiff and cross-claim filed by defendant Alvis were in a single action, the Rule 52(a) judgment does not represent a <u>relitigation</u> of issues or claims.[3] Accordingly, this assignment of error is overruled.[4]

## IV. Attorneys Fees

**[4]** Defendant Alvis argues that the trial court abused its discretion by awarding plaintiff $17,000.00 in attorneys' fees based upon its finding that he "unreasonably refused to fully resolve the matter" out of court. We disagree.

---

3. In this opinion, we hold only that the trial court's finding that defendant Alvis owes defendant Crown a gross payment deficiency under the Prime Contract is supported by competent evidence, that the Rule 52(a) judgment entered against Defendant Alvis and the default judgment entered against defendant Crown are not legally inconsistent as explained by *Streeter*, and that entry of default judgment against defendant Crown did not estop plaintiff from seeking a Rule 52(a) judgment against defendant Alvis. We do not consider the validity of the default judgment entered against defendant Crown, which has not been appealed.

4. In the section of his brief addressing inconsistency of judgments, defendant Alvis also argues that the trial court's entry of the Rule 52(a) judgment "effectively grants Terry's a double recovery arising out of a single contract" and states that "by opting to pursue and obtain a judgment against Crown on October 17, 2003, Terry's elected its remedy." Defendant Alvis did not assign error to the Rule 52(a) judgment on the basis of "double recovery" and does not support this argument with citation to any legal authority. Accordingly, this argument is not properly before the Court and we do not consider it. N.C. R. App. P. 10(a) and 28.

**TERRY'S FLOOR FASHIONS, INC. v. CROWN GEN. CONTR'RS, INC.**

[184 N.C. App. 1 (2007)]

N.C. Gen. Stat. § 44A-35 provides:

In any suit brought or defended under the provisions of Article 2 or Article 3 of this Chapter, the presiding judge may allow a reasonable attorneys' fee to the attorney representing the prevailing party. This attorneys' fee is to be taxed as part of the court costs and be payable by the losing party upon a finding that there was an unreasonable refusal by the losing party to fully resolve the matter which constituted the basis of the suit or the basis of the defense.

This Court reviews a trial court's award of attorney's fees pursuant to section 44A-35 for abuse of discretion. *Martin Architectural Prods. Inc. v. Meridian Constr. Co.*, 155 N.C. App. 176, 182, 574 S.E.2d 189, 193 (2002). "To demonstrate an abuse of discretion, the appellant must show that the trial court's ruling was manifestly unsupported by reason, or could not be the product of a reasoned decision." *Nationwide Mut. Fire Ins. Co. v. Bourlon*, 172 N.C. App. 595, 601, 617 S.E.2d 40, 45 (2005), *aff'd per curiam*, 360 N.C. 356, 625 S.E.2d 779 (2006) (internal citation omitted).

In support of his position, defendant contends that the trial court "punished" him for "asserting valid defenses [based upon the 14 January 2003 letter from Defendant Crown to Tilley] even following reasonable offers to settle." In his reply to plaintiff's motion for attorneys fees, defendant Alvis states that he made a settlement offer of $1,500.00 to plaintiff on 16 May 2004 and an second offer of $2,000.00 on 16 November 2004.

In response, plaintiff argues that $2,000.00 was not a reasonable settlement offer and emphasizes two letters from defendant Alvis, dated 26 June 2003 and 4 August 2003 respectively. The letters state:

In view of all the circumstances, [defendant Alvis] will make no voluntary payment to any party. If there is not a dismissal, then there will be a litigation of everyone's claims to judgment.

and

If we must file pleadings, then we will be looking to your client for a settlement payment to [defendant Alvis], and that is the only settlement we will consider. If your client ever makes a recovery against [defendant Alvis] it will be after trial court judgment and exhaustion of all appeals.

Additionally, plaintiff argues that defendant Alvis (1) pursued a meritless motion to remove the matter to superior court that was denied on 27 October 2003; (2) pursued meritless counterclaims against plaintiff that were dismissed by judgment on the pleadings entered 22 November 2004; and (3) pursued groundless motions to dismiss and motions for summary judgment of plaintiff's claims, which were denied (with the exception of plaintiff's claim for *quantum meruit*) on 7 June 2005.

After considering this and other evidence presented by the parties, including the report completed by Sinnett discussed in section II of this opinion, the trial court found the following:

15. Plaintiff has attempted to obtain payment funds secured by the Notice of Lien and the Lien from Defendants Crown and Alvis. Defendant Alvis unreasonably refused to fully resolve the matter after receiving the report from his consulting architect [Sinnett] on November 2, 2004. The consulting architect reported his conclusion that only about $7,000.00 in recommended remedial work was needed under the Prime Contract and of that amount, only $200.00 could be attributed to Plaintiff's performance under the Contract. Defendant Alvis presented no evidence that the recommended remedial work was ever contracted and paid for by him.

. . . .

18. As a result of Defendant Alvis' unreasonable refusal to fully resolve the matter that is the basis of this dispute, Plaintiff has incurred reasonable attorney's fees in the amount of $17,000.00. This amount represents fees incurred after November 2, 2004 and includes what the Court finds as a reasonable fee for preparing the Motion for Attorney Fees.

These findings of fact indicate, on their face, that the trial court's award of attorneys fees was the product of a reasoned decision: the trial court reasoned that because defendant's own consultant informed him on 2 November 2004 that it would only cost about $7,000.00 to remedy defendant Crown's deficient performance under the Prime Contract, it was unreasonable for defendant Alvis to insist that defendant Crown's deficient performance extinguished his obligations under the Prime Contract. Moreover, it is apparent from the remainder of the trial court's order that the court believed plaintiff's evidence tending to show that defendant's conduct caused or con-

tributed to the construction delay; thus, the trial court concluded that defendant Alvis was not entitled to a set off for liquidated damages.

We recognize that the dissenting opinion would vacate the award of attorneys' fees and remand this case to the trial court for additional findings regarding the reasonableness of the amount of fees awarded. We do not address the amount of the award because defendant Alvis did not assign error to the amount or mention this argument in his brief. For the reasons stated above, we conclude that the trial court did not abuse its discretion in awarding plaintiff attorneys fees based on defendant Alvis' unreasonable refusal to resolve the dispute out of court. Accordingly, this assignment of error is overruled.

V. Conclusion

For the reasons stated above we hold that (1) the trial court's finding that defendant Alvis owed a gross payment deficiency to defendant Crown was supported by competent evidence; (2) the trial court's entry of judgment against defendant Alvis in favor of plaintiff pursuant to N.C. Gen. Stat. § 1A-1, Rule 52(a) following a bench trial is not inconsistent with the court's entry of default judgment against defendant Crown in favor of defendant Alvis; and (3) the trial court did not abuse its discretion by awarding plaintiff $17,000.00 in attorneys' fees based upon a finding that defendant Alvis "unreasonably refused to fully resolve the matter" out of court. Accordingly, we affirm the judgment entered on 28 September 2005 by Judge Jane P. Gray in District Court, Wake County.

AFFIRMED.

Judge STEPHENS concurs.

Judge TYSON concurring in part and dissenting in part in a separate opinion.

TYSON, Judge, concurring in part, dissenting in part.

I concur in the result reached by the majority in sections I through III of their opinion. The award to plaintiff for $17,000.00 in attorneys' fees pursuant to N.C. Gen. Stat. § 44A-35 is error. No competent or substantial evidence supports any finding that defendant Alvis unreasonably refused to settle and without this finding, the trial court's unsupported conclusion to award attorneys' fees is an error of

law. The trial court also failed to make required findings of fact regarding the reasonableness of the attorneys' fees it awarded. I vote to reverse in part and respectfully dissent.

## I. Background

Following a bench trial, the trial court awarded plaintiff $7,921.00 in compensatory damages from defendant Alvis. The trial also awarded plaintiff $17,000.00 in attorneys' fees pursuant to N.C. Gen. Stat. § 44A-35.

The statute states, in relevant part:

In any suit brought or defended under the provisions of Article 2 or Article 3 of this Chapter, the presiding judge *may* allow a reasonable attorneys' fee to the attorney representing the prevailing party. This attorneys' fee is to be taxed as part of the court costs and be payable by the losing party *upon a finding that there was an unreasonable refusal by the losing party to fully resolve the matter which constituted the basis of the suit or the basis of the defense.*

N.C. Gen. Stat. § 44A-35 (emphasis supplied).

To support its award of attorneys' fees, the trial court found as fact:

15. Plaintiff has attempted to obtain payment funds secured by the Notice of Lien and the Lien from Defendants Crown and Alvis. Defendant Alvis unreasonably refused to fully resolve the matter after receiving the report from his consulting architect on November 2, 2004. The consulting architect reported his conclusion that only about $7,000.00 in recommended remedial work was needed under the Prime Contract and of that amount, only $200.00 could be attributed to Plaintiff's performance under the contract. Defendant Alvis presented no evidence that the recommended remedial work was ever contracted and paid for by him.

16. Defendant Alvis did not tender an Offer of Judgment in this lawsuit.

17. Plaintiff is the prevailing party.

18. As a result of Defendant Alvis' unreasonable refusal to fully resolve the matter that is the basis of this dispute, Plaintiff has incurred reasonable attorney fees in the amount of $17,000.00. This amount represents fees incurred after November 2, 2004 and

includes what the Court finds as a reasonable fee for preparing the Motion for Attorney Fees.

The trial court concluded as a matter of law:

12. In the Court's discretion, Plaintiff's reasonable attorneys' fees in the amount of $ 17,000.00 should be taxed against Defendant Alvis as court costs pursuant to N.C.G.S. § 44A-35.

## II. Standard of Review

Upon an appeal from a judgment entered in a non-jury trial, our Supreme Court imposed "three requirements on the court sitting as finder of fact: it must (1) find the facts on all issues joined in the pleadings; (2) declare the conclusions of law arising from the facts found; and (3) enter judgment accordingly." *Stachlowski v. Stach*, 328 N.C. 276, 285, 401 S.E.2d 638, 644 (1991). Our standard of review is whether competent evidence exists to support the trial court's findings of fact and whether the findings support the conclusions of law. *Sessler v. Marsh*, 144 N.C. App. 623, 628, 551 S.E.2d 160, 163, *disc. rev. denied*, 354 N.C. 365, 556 S.E.2d 577 (2001). The trial court's conclusions of law drawn from the findings of fact are reviewable *de novo. Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980).

In addition, when awarding attorneys' fees, the trial court must make specific findings of fact concerning the attorney's skill, the attorney's hourly rate, and the nature and scope of the legal services rendered. *In re Baby Boy Scearce*, 81 N.C. App. 662, 663-64, 345 S.E.2d 411, 413, *disc. rev. denied*, 318 N.C. 415, 349 S.E.2d 590 (1986). Whether these requirements are met is a question of law, reviewable on appeal. *Taylor v. Taylor*, 343 N.C. 50, 54, 468 S.E.2d 33, 35 (1996).

The decision to award attorneys' fees pursuant to N.C. Gen. Stat. § 44A-35 is within the trial court's discretion. N.C. Gen. Stat. § 44A-35 "does not mandate that the trial court award attorneys' fees, but instead places the award within the trial court's discretion." *Barrett Kays & Assocs., P.A. v. Colonial Bldg. Co.*, 129 N.C. App. 525, 530, 500 S.E.2d 108, 112 (1998).

## III. Unreasonably Refused to Settle

Defendant Alvis argues the evidence does not support the trial court's finding that he unreasonably refused to settle. Defendant Alvis contends he attempted to resolve the matter in good faith by offering

**TERRY'S FLOOR FASHIONS, INC. v. CROWN GEN. CONTR'RS, INC.**

[184 N.C. App. 1 (2007)]

plaintiff successive settlements of $1,500.00 and $2,000.00 and he asserted valid defenses against plaintiff's claims. I agree.

N.C. Gen. Stat. § 44A-35 provides the trial court "may" award a prevailing party a reasonable attorneys' fee upon a finding there was an "unreasonable refusal . . . to fully resolve the matter which constituted the basis of the suit or the basis of the defense." An award of attorneys' fees under this statute is not mandatory and the trial court may only award attorneys' fees in cases after findings of fact based upon substantial evidence of the losing party's unreasonable refusal to settle or the failure to assert valid defenses. N.C. Gen. Stat. § 44A-35; *see Barrett Kays & Assocs., P.A.*, 129 N.C. App. at 530, 500 S.E.2d at 112 (The statute "does not mandate that the trial court award attorneys' fees, but instead places the award within the trial court's discretion.")

Plaintiff's allegations against defendant Alvis showed he was only secondarily liable to plaintiff after defendant Crown, the general contractor. Defendant Alvis never dealt directly with plaintiff prior to hearing from plaintiff's attorney about a possible lawsuit. When confronted with a lawsuit from plaintiff, defendant Alvis was reasonable to rely on the general contractor, in which defendant Crown stated it had "been paid in full for all services rendered" as of 14 January 2003 for work on defendant Alvis's job. Defendant Alvis's defenses for offsets and credits were allowed by the trial court to reduce any gross deficiency due plaintiff.

The majority's opinion relies in part on two letters dated 26 June 2003 and 4 August 2003 from defendant Alvis's counsel to plaintiff's counsel after suit was filed. In these letters, defendant Alvis's counsel states he "will make no voluntary payment to any party" and that the only settlement he will consider is a payment from plaintiff to defendant Alvis. At that time, defendant Alvis had asserted claims against defendant Crown and defendant Alvis's architect had supported offsets against both plaintiff and defendant Crown for deficiencies. These letters fail to show defendant Alvis unreasonably refused to resolve the matter. Both letters were dated *prior to* the two settlement offers made by defendant Alvis to plaintiff. These letters became irrelevant after substantial settlement offers were made to and rejected by plaintiff and cannot support a finding that defendant Alvis unreasonably refused to settle.

On 16 May 2004, defendant Alvis made a settlement offer of $1,500.00 to plaintiff. Plaintiff rejected this offer. Defendant Alvis

made a second settlement offer to plaintiff on 16 November 2004 for $2,000.00 prior to the initial trial date in this matter. Plaintiff rejected this offer and counter offered $7,921.00, no compromise from the original amount of its claim in the complaint. In its findings of fact concerning the award of attorneys' fees to plaintiff, the trial court failed to consider or make findings of fact regarding the two settlement offers defendant Alvis made to plaintiff after the letters, but prior to trial.

Without adequate findings of fact, the trial court's conclusion to award plaintiff attorneys' fees pursuant to N.C. Gen. Stat. § 44A-35 is error. Defendant Alvis made two separate substantial settlement offers to plaintiff and asserted reasonable defenses against plaintiff's claims. The trial court's conclusion to award plaintiff attorneys' fees pursuant to N.C. Gen. Stat. § 44A-35 is not supported by its findings of fact. I respectfully dissent.

### IV. Reasonableness of the Attorneys' Fees Awarded

The trial court also failed to make required findings of fact as to the reasonableness of the attorneys' fees awarded.

The majority's opinion asserts defendant Alvis failed to assign error or argue the amount of attorneys' fees awarded. Defendant Alvis assigned error to:

> 20. Paragraph 3 of the Trial Court's Final Decree in the Rule 52(A) Judgment, on the grounds that the evidence was insufficient to support a finding that Plaintiff-Appellee should recover attorneys' fees from Defendant-Appellant, and an award of the same is contrary to law.

Defendant Alvis argues in his brief, "[T]he trial court abused its discretion in awarding [plaintiff's] more than 2 times the amount of the contract in attorney fees. The decision of the trial court awarding Terry's $17,000.00 in attorneys fees constitutes an abuse of discretion and should be reversed." Defendant Alvis also "request[ed] that this Court reverse and vacate the trial court's Rule 52(A) Judgment awarding . . . attorney's fees." Defendant Alvis assigned error to, and argued, the amount of the attorneys' fee awarded was unreasonable.

This Court has stated:

> A trial court, in making an award of attorneys' fees, *must explain why the particular award is appropriate and how the court arrived at the particular amount*. Specifically, an award of attor-

ney's fees usually requires that the trial court enter findings of fact as to the time and labor expended, skill required, customary fee for like work, and experience or ability of the attorney based on competent evidence.

*Dunn v. Canoy*, 180 N.C. App. 30, 49, 636 S.E.2d 243, 255 (2006) (emphasis supplied) (internal quotation and citations omitted), *disc. rev. denied*, 361 N.C. 351, —— S.E.2d —— (2007); *see Thorpe v. Perry-Riddick*, 144 N.C. App. 567, 572, 551 S.E.2d 852, 856 (2001) ("If the trial court elects to award attorney fees, it must also enter findings of fact as to the time and labor expended, skill required, customary fee for like work, and experience or ability of the attorney based on competent evidence."); *see also Brookwood Unit Ownership Assn. v. Delon*, 124 N.C. App. 446, 449-50, 477 S.E.2d 225, 227 (1996) ("To determine if an award of counsel fees is reasonable, 'the record must contain findings of fact as to the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney' based on competent evidence." (quoting *West v. Tilley*, 120 N.C. App. 145, 151, 461 S.E.2d 1, 4 (1995); *United Laboratories, Inc. v. Kuykendall*, 102 N.C. App. 484, 494, 403 S.E.2d 104, 111 (1991), *aff'd*, 335 N.C. 183, 437 S.E.2d 374 (1993)).

The trial court failed to make these required findings of fact and erred by awarding to plaintiff $17,000.00 in attorneys' fees pursuant to N.C. Gen. Stat. § 44A-35. The statute states, "the presiding judge may allow a *reasonable attorneys' fee* to the attorney representing the prevailing party." N.C. Gen. Stat. § 44A-35 (emphasis supplied).

The trial court "must . . . make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law." *Spicer v. Spicer*, 168 N.C. App. 283, 287, 607 S.E.2d 678, 682 (2005).

The trial court's findings of fact concerning the imposition of attorneys' fees are set out above. The trial court failed to make any finding of fact "as to the time and labor expended, skill required, customary fee for like work, and experience or ability of the attorney based on competent evidence." *Dunn*, 180 N.C. App. at 49, 636 S.E.2d at 255. Without these findings, this Court cannot "determine whether [the] judgment, and the legal conclusions that underlie it, represent a correct application of the law." *Spicer*, 168 N.C. App. at 287, 607 S.E.2d at 682. Here, the trial court's award of $17,000.00 in attorneys'

fees to plaintiff must be vacated and remanded for further findings and conclusions regarding the reasonableness of the award. *Dunn*, 180 N.C. App. at 50, 636 S.E.2d at 256.

### V. Conclusion

Defendant Alvis did not unreasonably refuse to settle this matter with plaintiff. Defendant Alvis never dealt directly prior to plaintiff's demands, made two separate and substantial settlement offers to plaintiff, asserted reasonable defenses against plaintiff's claims, and was awarded offsets and credits set forth in his answer by the trial court. No evidence shows defendant Alvis ·"unreasonably refused" to settle with plaintiff. I vote to reverse the trial court's order on this issue.

Alternatively, the trial court failed to make any finding of fact "as to the time and labor expended, skill required, customary fee for like work, and experience or ability of the attorney based on competent evidence." *Dunn*, 180 N.C. App. at 49, 636 S.E.2d at 255. Without these findings, this Court cannot review and determine whether the trial court's award of attorneys' fees was "reasonable." N.C. Gen. Stat. § 44A-35. The trial court's award of $17,000.00 in attorneys' fees to plaintiff should be vacated and remanded for further findings regarding the reasonableness of the award using the factors in the numerous cases cited above. I respectfully dissent.